Judith **MIYOSHI,** Plaintiff,

v.

Otis **BOWEN, M.D.,** Secretary of Health and Human Services, Defendant.

No. 87 C 7335.

United States District Court, N.D. Illinois, E.D.

Sept. 14, 1988.

Jan L. Kodner, Chicago, Ill., for plaintiff.

Mark A. Flessner, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Donna Morros Weinstein, Chief Counsel, Region V, Dept. HHS, Felisia Wesson, Asst. Regional Counsel, Chicago, Ill., for defendant.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Claimant Judith Miyoshi applied for Supplemental Security Income (SSI) benefits under Sections 1602 and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A), alleging disability due to severe migraine headaches, varicose veins, peptic ulcers and a seizure disorder. Her application was denied by the Secretary of Health and Human Services (Secretary) and she now seeks review pursuant to 42 U.S.C. § 405(g). Currently before this court are cross-motions for summary judgment. We deny the Secretary's motion for summary affirmance, grant plaintiff's motion for summary judgment, reverse the Secretary's decision and order that claimant be awarded appropriate benefits.

### FACTS

The current SSI application was filed in May 1986 [1] and was denied both initially and on reconsideration. Claimant thereafter received a hearing for *de novo* determination of her claim before Administrative Law Judge Arlander Keys (ALJ). In an opinion issued February 26, 1987, the ALJ concluded that objective medical evidence did not support claimant's subjective complaints and he denied her application (R. 16–21). The Appeals Council denied review (R. 3–4) and the ALJ's judgment became the final decision of the Secretary.

Claimant was 47 years old at the time of the hearing. She attended high school through the tenth grade and has no rele-

---

**1.** Claimant's first SSI application, filed on March 6, 1985, was denied at the state administrative level both initially and on reconsideration, and she did not seek further administrative review. The Secretary's decision to deny claimant benefits that we review here is based solely on claimant's 1986 application.

vant vocational experience. Her headaches commenced in 1974, when she underwent a mastoidectomy (excision of the mastoid cells behind the ear) and drainage of the right ear. Later that same year claimant suffered an incapacitating seizure and had a cyst surgically removed from the right side of her brain. At the administrative hearing claimant testified that she still suffers severe headaches twice a week, lasting two to three days and resulting in loss of appetite, nausea and vomiting. When the headaches occur she is disturbed by light and is unable to read or watch television. Her treating physician for over ten years, Dr. Hilliard Slavick, Director of the Headache Clinic at Illinois Masonic Hospital, in a letter to claimant's attorney dated May 5, 1987, corroborated her complaints:

> Her headaches are quite severe and lead to a complete disability during those times with nausea, vomiting and the patient must take more pain medication and lay down and sleep in order to try and rid herself of these painful headaches. She cannot work during them. I have seen her on occasion during these times and she is quite uncomfortable and they are an obvious organic or real phenomenon. The condition does exist and I have been prescribing medication for it for many many years. There is no one single test that will identify this condition and it is made on the basis of her classical history of presentation along with associated symptoms and location of pain.

(R. 6.)[2] In earlier letters to the Secretary Dr. Slavick stated that in his opinion claimant was unable to work because of her disability (R. 162, 190). Claimant's progress reports show appointments with Dr. Slavick for treatment every other month, dating back to 1981. Each entry almost always refers either to claimant's headaches (sometimes abbreviated as HAs) or to a prescription for her condition (Surmontil, Procardia and Empirin # 3) (R. 232–236).

Claimant's other impairments include a seizure disorder, varicose veins causing pain in her legs, and peptic ulcers. Her seizure disorder is confirmed by several EEG reports showing generalized dysrhythmia (R. 194–6, 204). Initially treated with Dilantin, claimant now regularly takes Depakene and has not experienced a seizure since 1975. The medical evidence also confirms claimant's varicosities. Dr. Slavick and claimant's other treating physician, Dr. Boris Lushniok, both state that claimant suffers pain in her legs due to varicose veins (Dr. Slavick states that she has intermittent claudication) which adversely affect her mobility and have recommended that she keep her legs wrapped and elevated (R. 207, 210). A consultative examination showed no edema, calf tenderness, stasis dermatitis or ulcers, and the examining physician concluded that claimant could bear weight and did not need an ambulatory device for mobility (R. 179–83). A Doppler study was performed on July 29, 1985, revealing an ankle/brachial ratio of 0.92 (R. 222). (The Secretary's regulations mandate a finding of disability if the ratio is less than 0.5, see Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 4.13 B.1.) Claimant's peptic ulcers are controlled with Tagamet.

## DISCUSSION

In reviewing the ALJ's determination we do not conduct a hearing *de novo* but, instead, determine whether the findings are supported by substantial evidence on the record as a whole. *Davis v. Califano*, 603 F.2d 618, 625 (7th Cir 1979). Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The Secretary has the duty to consider all the effects of impairments, physical and mental, and cannot choose to discuss only that evidence which supports his conclusion. *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir.1984). If the Secretary's decision is predicated on errors of law, we must reverse. *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir.1980).

---

2. Dr. Slavick's letter was submitted to the Appeals Council after the ALJ rendered his opinion and is therefore part of the record for this court's review.

To be entitled to disability benefits claimant must show that she was unable to perform substantial gainful employment "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Symptoms from an underlying medical condition can be so severe as to be disabling and the Seventh Circuit has expressly recognized that vascular headaches alone may provide a basis for disability benefits. *See Look v. Heckler*, 775 F.2d 192 (7th Cir.1985) (remand to Secretary to reevaluate claimant's complaint of cluster headaches). To establish a disability based on pain the Secretary's regulations require "medical signs or findings ... that there is a medical condition that could be reasonably expected to produce those symptoms." 20 C.F.R. § 404.1529; *Sparks v. Bowen*, 807 F.2d 616, 618 (7th Cir.1986).

■ There is conflicting evidence on claimant's exertional impairments. Although claimant's treating physician notes that claimant feels leg pain on exertion, the consultative reports and the results of the Doppler study provide evidence for a finding that her varicose veins are not disabling. Her seizure disorder is also confirmed but the record shows that it is controlled by medication. We find that substantial evidence supports the ALJ's decision that claimant does not suffer from severe exertional limitations.

■ The finding that claimant does not suffer from disabling headaches, however, is unsupported. The ALJ rejected claimant's contention that she suffers from severe and disabling migraine headaches despite her uncontradicted testimony and Dr. Slavick's reports. This decision was essentially based on two rationales: first, the ALJ did not believe claimant because she exaggerated her medical complaints and, second, the ALJ thought the objective medical evidence did not establish a condition which would reasonably cause claimant's complaint of pain. We evaluate these rationales to determine whether they warrant the denial of claimant's request for benefits.

The ALJ discredited claimant's contention that she was disabled:

The claimant's testimony, which indicated virtual total incapacitation, was couched in such extreme terms as to be inherently suspicious. She has, furthermore, escalated her complaints with each step of her appeal, even though she originally described very considerable problems.

(R. 17.) The ALJ did recognize some support in the medical evidence for her claim that the vascular headaches were disabling:

With respect to the subjective history that is revealed in the medical reports, the claimant's complaints are indeed registered and there are no particular contradictions. But the medical reports, for the most part, do not record the complaints in such extreme terms as was represented directly to the Administration. ... the progress notes of Dr. Slavick seem to record all of the claimant's complaints at one time or another, but they do not indicate that she was in such extreme and constant difficulty as she described in her testimony.

(R. 18.)

■ If the ALJ's conclusion was based upon a belief that vascular headaches cannot be disabling, his medical judgment must be reversed as a matter of law. *See Look, supra.* Apparently, however, the ALJ believed that claimant exaggerated her complaints to improve her chances of receiving benefits. For example, while claimant testified that she suffered from headaches twice a week, Dr. Slavick's April 22, 1986 notations state that they occur every seven to ten days. We note, however, that claimant's testimony at the time of the hearing may not be inconsistent with the medical records in light of the December 12, 1986 entry, which states that the headaches have increased in frequency. Further, the ALJ remarked that during a 1982 hospitalization one doctor noted in connection with evaluation of her "intractable headaches" that a "functional overlay should be in mind" (R. 147).

As a district court sitting in review of the ALJ's decision, we do not determine the credibility of claimant's testimony. *See Havorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir.1984). However, the denial of benefits must be reversed here because the ALJ's rationale is not supported by substantial evidence. Although Dr. Slavick did not remark on the frequency and duration of claimant's headaches in all his medical entries, he noted any change in claimant's condition, regularly prescribed medicine for it, and the ALJ should not have expected claimant's treating physician for ten years to recite the details of claimant's condition at every visit. With respect to the comment that a functional overlay should be kept in mind, it is undisputed that claimant does indeed suffer from some level of chronic headache syndrome. While claimant may have been "gilding the lily" to bolster her case before the administration, those complaints that have been documented cannot be ignored. Even if claimant does not suffer from migraines twice a week it is clear that she does get them with regular frequency and the medical evidence corroborates that the headaches are refractory to medication. Any exaggeration of her condition by the claimant at the hearing does not preclude benefits if credible medical history establishes disability.

The ALJ appears to accept that medical history as credible but as inadequate to demonstrate disability because of a lack of objective medical evidence. That other rationale for finding claimant not disabled—the lack of objective medical evidence in support of her claim—must also be rejected. The ALJ stated in his opinion:

> No definite underlying cause for the headaches has been demonstrated.... A [Computer Tomographic or CT] scan of the brain obtained in November 1982 was normal. A 24 hour ambulatory EEG was "mildly" abnormal and the abnormal patterns "did not correlate with her somatic complaints." A CT scan in November 1984 was essentially normal.

(R. 20.) With reference to claimant's last CT brain scan in 1984, the ALJ stated at the hearing:

> I'm puzzled if she's having the persistent headaches that she testifies that she has, why haven't [the doctors] given her further tests, specifically a CAT scan to see if there is something else there. [Is there no] indication that there's been any recurrence of the—the cyst that you had?

(R. 42.)

It is the duty of the ALJ to weigh conflicting evidence and make disability determinations based on that evidence, but he is not in the position to render a medical judgment. *Honeysucker v. Bowen*, 649 F.Supp. 1155, 1161 (N.D. Ill. 1986) ("an ALJ may not make his own diagnosis of a claimant.... The ALJ cannot substitute his personal reaction for the evidence of expert testimony") (citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985)). Here the ALJ found that claimant did not suffer from a medical condition despite uncontradicted medical testimony to the contrary. In his search for objective "medical signs or findings ... that there is a medical condition that could be reasonably expected to produce" claimant's headaches, *see Sparks v. Bowen*, 807 F.2d at 618, the ALJ required more of claimant than medical science itself can provide. Migraine headaches are vascular in nature and do not necessarily produce the type of laboratory evidence that the ALJ seemed to demand. Although CT scans are useful in ruling out structural causes of persistent headaches, they cannot be used to prove or disprove the existence of a vascular headache. This fact was noted by Dr. Slavick in his letter to claimant's counsel, and medical literature shows that the patient's medical history and symptomology provides the basis for the diagnosis and treatment of vascular headaches. *See, e.g.,* Campbell, "Laboratory Evaluation of the Headache Patient" 5 *Headache* (September 1986) (at 5: "The tomographic scan in migraine is usually normal"; at 11: "Electroencephalography is rarely needed in the investigation of headache"); Kunkel, "Evaluating the Headache Patient: History and Workup" *Headache* 122 (April 1979) (discussing the use of laboratory data, but stressing

the primary importance of the patient's medical history).

Given Dr. Slavick's expertise in neurology and his medical judgment regarding claimant's treatment, the ALJ's determination must be rejected. The decision not to order further CT scans should in no way contribute to the ALJ's rejection of claimant's testimony. The "mildly abnormal" EEG tests were not designed to diagnose the headaches, but instead were used to monitor claimant's seizure disorder. Further, claimant recites the classic symptoms for migraine headaches—sensitivity to light, persistent fluctuating pain for up to two or three days, nausea and vomiting—and given her education and background it is doubtful that she planned visits to her physician and regularly took prescribed medicine for many years in order to claim undeserved benefits. We therefore reverse the ALJ's determination that claimant does not suffer from severe headaches.

■ When an ALJ's decision is unsupported by substantial evidence we must remand the case to the Secretary for further proceedings. Here, however, we cannot expect further objective evidence to substantiate claimant's medical condition because the diagnosis of that condition must be based upon claimant's symptomology and medical history—factual issues that are already of record and that we understand the ALJ accepts. Since "the plaintiff's entitlement is clear from the record and ... a remand would simply delay receipt of deserved benefits," *Bryant v. Harris*, 494 F.Supp. 932, 933 (D.S.C.1980) (citing *Grable v. Secretary of HEW*, 442 F.Supp. 465 (W.D.N.Y.1977)), we reverse the Secretary's decision and order that claimant be awarded the appropriate benefits. *See also Bohn v. Heckler*, 613 F.Supp. 232, 237 (N.D. Ill.1985) (discussing role of district court when remanding cases).

## CONCLUSION

For the foregoing reasons we grant summary judgment to claimant, reverse the Secretary's decision and order him on remand to award claimant the appropriate SSI benefits.