**Michael J. BOLAN, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of Social Security Administration, Defendant.**

**Civil Action No. 00–2517–DJW.**

United States District Court,
D. Kansas.

July 16, 2002.

1. Jo Anne B. Barnhart became Commissioner of Social Security on November 9, 2001. Pursuant to Fed.R.Civ.P. 25(d)(1), Jo Anne B. Barnhart should be substituted for Acting Commissioner William A. Halter as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

Wesley A. Cottrell, Rogers, AR, for plaintiff.

Melanie D. Caro, Robert A. Olsen, Office of U.S. Attorney, Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the final decision of Defendant Commissioner of Social Security Administration (Commissioner) denying Plaintiff's applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended. The parties have filed their consent to jurisdiction by a U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73 (doc. 15). Plaintiff has filed his brief (doc. 12) seeking judicial review of the Commissioner's decision. Defendant has filed a brief in opposition (doc. 14).

The Court has reviewed the administrative record and the briefs of both parties. As set forth below, the Court reverses the decision of the Commissioner and remands the case back to the administrative law judge for further proceedings consistent with this decision.

## I. Standard of Review

■■ Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of record, a judgment affirming,

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)). "Although the court is not to reweigh the evidence, the findings of the [Commissioner] will not be mechanically accepted." *Graham v. Sullivan*, 794 F.Supp. 1045, 1047 (D.Kan.1992). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). This determination entails a review of the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision. *Casias*, 933 F.2d. at 800–801. "Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusions.'" *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993). The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis. *Id.* Thus, the court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir.1992).

## II. Procedural History

Plaintiff filed his applications for disability insurance and supplemental security income benefits on February 10, 1999. (*See* Certified Tr. of the Record at 106–18, 236–241, doc. 11, hereinafter referred to as Tr.) In both applications, he alleged disability beginning on July 20, 1998. (Tr. 106, 236) The Commissioner denied both claims initially, and upon reconsideration. (Tr. 69–74, 77–81)

On December 8, 1999, an administrative law judge (ALJ) conducted a hearing on Plaintiff's claims. (Tr. 24–65) Plaintiff appeared in person without representation. (Tr. 26) On January 12, 2000, the ALJ issued his decision in which he found Plaintiff suffered from the severe impairments of a "status post L1 compression fracture" and degenerative joint disease of the lumber spine. (Tr. 17) The ALJ, however, determined that degenerative findings in Plaintiff's upper back and neck were nonsevere in nature. (Tr. 17) The ALJ found that Plaintiff retained the residual functional capacity to return to his past relevant work as a collections person, not as he had performed it, but as that job is customarily performed in the national economy. (Tr. 22) In the alternative, the ALJ found Plaintiff was able to make an

adjustment to other work which exists in the significant numbers in the national economy. (Tr. 22) Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (Tr. 23)

On February 4, 2000, Plaintiff requested a review of the hearing decision by the Appeals Council and submitted a letter and additional medical evidence [2] relating to his alleged impairments. (Appendix 1 to Pl.'s Br.) The Appeals Council issued an order stating that the evidence submitted by Plaintiff was received and made a part of the record. (Tr. 8) On September 9, 2000, the Appeals Council found no basis for granting the request for review and concluded that the contentions raised in the request did not provide a basis for changing the ALJ's decision. (Tr. 6–7) Thus, the findings of the ALJ stand as the final decision of the Commissioner in this case.

### III. Factual Summary

Plaintiff testified that he was age 42 at the time of the hearing. (Tr. 42) Thus, according to Social Security regulations, he is classified as a younger individual. 20 C.F.R. Part 404, Subpart P, App. 2, Rule 200.00(h). He possesses a high school education and has "a couple years of college for management courses." (Tr. 29) His past work includes sales/collections person, forklift operator, Pizza Hut manager, and crane operator. (Tr. 123) Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2003. (Tr. 109)

Plaintiff alleges he is disabled due to back injuries causing back pain and numbness in his arms and hands. (Tr. 125, 106, 122) Plaintiff stated that he injured his lower back while aiding his mother-in-law with "handyman stuff." (Tr. 32) His complaints include constant back pain and right-sided numbness in his back, leg, and toes. He also complains of diminished strength in his hands with difficulty grasping, a problem which is worse in his left hand but also present in his dominant right hand. (Tr. 16) Plaintiff alleges an onset date of disability of July 20, 1998. (Tr. 106, 236)

### IV. The ALJ's Findings

In his order of January 12, 2000, the ALJ made the following findings:

- The claimant met the disability insured status requirements of the Act on July 20, 1998, the date claimant stated he became unable to work, and has acquired sufficient quarters of coverage to remain insured through at least December 31, 2003.

2. The claimant has not engaged in substantial gainful activity since July 20, 1998.

3. The medical evidence establishes that the claimant is status post L1 compression fracture, and has degenerative joint disease of the lumbar spine, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements concerning his impairments and their im-

---

**2.** The additional medical evidence submitted to the Appeals Council consisted of a letter dated May 24, 2000, from Plaintiff's treating source, Lynnette Sanders, a Registered Nurse Practitioner. Ms. Sanders stated in the letter that she believed Plaintiff was unable to con-

duct the EMG and MRI studies recommended by Dr. Yost and herself due to "financial distress." She also stated that she would not be able to make further determination concerning Plaintiff's ability to work without these studies. Pl.'s Br., App. 1 (doc. 12).

pact on his ability to work are credible only insofar as they preclude work activity exceeding the residual functional capacity set forth below.

5. The claimant retains the residual functional capacity to perform sedentary work, or work which requires lifting or carrying 20 pounds occasionally and nominal weight frequently, sitting for up to 6 hours in an 8–hour workday, and standing and/or walking for up to 2–4 hours of an 8–hour workday (15–30 minutes at a time), with alternation of position from standing to sitting at 30–60 minute intervals. The claimant could not perform work requiring continuous or repetitive bilateral handling/fingering, or more than moderate bending, stooping, kneeling, crouching, or crawling.

6. The claimant is capable of performing his past relevant work as a collections person, not as he performed it, but as that job is customarily performed in the national economy, because that job does not require the performance of work functions precluded by his medically determinable impairments.

7. The claimant is 42 years old, which is defined as a "younger individual."

8. The claimant has a high school education.

9. The claimant has skilled and semi-skilled work experience and has acquired skills which may be used in performing jobs within his residual functional capacity. Such skills include sales, planning, training, scheduling, and collections, which are transferable to occupations such as that of a telemarketer.

10. Based on an exertional capacity for sedentary work, and the claimant's age, educational background, and work experience, Sections 404.1569 and 416.969, and Rule 201.29, Table 1, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

11. The claimant's capacity for sedentary work has not been significantly compromised. A finding of "not disabled" is, therefore, reached within the framework of the above-cited rule.

12. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 22–23)

## V. Plaintiff's Challenges to the Commissioner's Decision

Plaintiff challenges the decision of the Commissioner denying him disability insurance and supplemental security income benefits on several grounds. Plaintiff contends the Commissioner's decision was not based on substantial evidence in the record as a whole, and that the ALJ made several errors that are grounds for reversal of his decision. Specifically, Plaintiff contends that: (1) the ALJ erred by not finding him presumptively disabled under section 1.05(C) of the Listing of Impairments, (2) the ALJ erred by failing to fully and fairly develop the record as to his back and neck impairments, (3) the ALJ erred by rejecting Plaintiff's subjective complaints of disabling pain, (4) the ALJ erred by failing to give proper weight to Plaintiff's treating source, and (5) the ALJ erred by relying on the Medical–Vocational guidelines ("the grids"). Plaintiff urges reversal with an immediate award of benefits because the evidence establishes that he is presumptively disabled.

The Commissioner seeks an order affirming the decision, denying Plaintiff disability benefits. The Commissioner sub-

mits that substantial evidence supports the decision that Plaintiff is not disabled.

## VI. Analysis and Discussion

### A. Listing of Impairments

 Plaintiff first contends that the Commissioner's decision finding him not disabled should be reversed because he qualifies as presumptively disabled under section 1.05(C) of the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2001). Plaintiff claims that he is presumptively disabled because the medical evidence indicates his condition meets or equals the severity contemplated by section 1.05(C). In particular, he argues that the medical evidence shows that he has a status post compression fracture with limited range of motion, muscle spasm, loss of grip strength and leg strength, as well as sensory and reflex loss. Thus, the medical evidence supports a finding that he meets or equals the requirements of section 1.05(C) of the Listing of Impairments. Plaintiff also argues that the ALJ's statement indicating a review of the general Medical Listing 1.01, Musculoskeletal Disorders, is significant because he made no mention of Listings 1.04 and 1.05 in his decision. In response, the Commissioner argues that the ALJ properly found Plaintiff did not meet the requirements of any listing. The Commissioner has developed a five-step sequential evaluation process for determining disability. *Thomas v. Apfel,* No. 99–2067–JWL, 1999 WL 1423073, at *2 (D.Kan. Dec.14, 1999) (citing *Thompson,* 987 F.2d at 1486; 20 C.F.R. §§ 404.1520, 416.920).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he or she is not, the decision maker proceeds to step two, determining whether the claimant has a medically severe impairment or combination of impairments which significantly limit the claimant's ability to work. If the claimant is able to make such a showing, the decision maker proceeds to step three, whether the impairment meets or equals one of a number of listed impairments that are so severe as to preclude substantial gainful activity. If the claimant's impairment does not satisfy this step, then the decision maker proceeds to step four, where the claimant must show that the impairment prevents the claimant from performing work he has performed in the past. At step five, the burden shifts to the Commissioner to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy.

*Thomas,* 1999 WL 1423073, at *3 (internal citations omitted).

 At step three of the sequential analysis, the ALJ determines whether a claimant's impairment "is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.*

 At this step, the ALJ "compare[s] the symptoms, signs, and laboratory findings about [a claimant's] impairment(s), as shown in the medical evidence [associated with the claim], with the medical criteria shown with the listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). In reviewing the Listing, the ALJ must provide sufficient discussion of his or her conclusion at step three so that the decision can be meaningfully reviewed. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996). In *Clifton,* the Tenth Circuit reversed the district court and remanded the case for additional proceedings when the ALJ

made such a "bare conclusion" that it was effectively "beyond meaningful judicial review." *Clifton,* 79 F.3d at 1009. The court's decision was based on the fact that "the ALJ did not discuss the evidence or his reasons for determining that [claimant] was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that [claimant's] impairments did not meet or equal any Listed Impairment." *Id.*

■ In this case, the ALJ stated he had reviewed "Medical Listing 1.01 Musculoskeletal Disorders, as well as all the other listings" and found that Plaintiff had no impairment or combination of impairments which meets the criteria of any the listed impairments. (Tr. 17) The ALJ then noted that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment. (Tr. 17) Finally, he stated that he had considered the opinions of the state agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion. (Tr. 17)

The Court notes that Medical Listing 1.01 is merely the heading: "1.01 Category of Impairments, Musculoskeletal." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.01. Listing 1.01 is a category of impairments consisting of impairments ranging from Listing 1.02 (Active rheumatoid arthritis and other inflammatory arthritis) to Listing 1.13 (Soft tissue injuries of an upper or lower extremity). *Id.* As Listing 1.01 is merely a category of musculoskeletal impairments, the ALJ has not specifically identified the relevant listings he compared with Plaintiff's impairments to ascertain if they meet or equal that listing. Without any reference to a specific listing, it is not possible for the Court to meaningfully review the ALJ's decision to determine whether substantial evidence supports a finding that Plaintiff's impairments

do not meet or equal the criteria of that listing. *Clifton,* 79 F.3d at 1009. In addition to failing to identify the specific listing, the ALJ did not discuss the evidence or his reasons for determining that Plaintiff's impairments did not meet or equal any musculoskeletal impairment listing. Therefore, remand is necessary to allow the ALJ to specifically identify those relevant listings he compared· to Plaintiff's symptoms, signs, and laboratory findings. After identifying the relevant listings, the ALJ shall set out his specific findings and his reasons for accepting or rejecting evidence regarding whether Plaintiff's impairments meet or equal those listings. The ALJ shall specifically address Listing 1.05(C), "Other Vertebrogenic Disorders," in his discussion.

## B. Developing the Record

■ Plaintiff next contends that the ALJ failed to fully and fairly develop the record regarding his impairments. He argues that the ALJ failed to obtain the additional medical testing recommended by his physicians or to provide any reason for not ordering further testing. Plaintiff asserts that the need for adequate development of the record is heightened in this case because he was unrepresented during the hearing. In response, the Commissioner argues that the ALJ appropriately developed the record because during the hearing he carefully questioned Plaintiff on all aspects of his impairment and history, including his past work, daily activities, the nature and location of his pain, precipitating factors to the pain, medication and side effects, and treatment sought. In addition, Plaintiff had a consultive examination and evaluation by Gene Hahn, M.D., on April 12, 1999.

■ In every social security disability case, the claimant has the burden of proving disability. *Hawkins v. Chater,*

113 F.3d 1162, 1164 (10th Cir.1997). Nonetheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993); *see also* 20 C.F.R. §§ 404.1512(a)-(c), 416.912(d). The ALJ's duty is "one of inquiry and factual development," including developing a complete medical record by obtaining medical evidence for at least the twelve months prior to the date the claimant filed the application for benefits. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(d), 416.912(d). Because Plaintiff was unrepresented at the hearing, the ALJ's duty to develop the record is heightened in this case. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).

At the hearing before the ALJ, Plaintiff raised the issue of whether his medical record had been fully developed. When questioned about his claimed back impairment, Plaintiff testified that he had not investigated his back fracture any further because he could not afford an MRI and additional x-rays. (Tr. 31) He also testified that he had received information just the week prior to the hearing about "neck problems no one had bothered to tell [him] about." (Tr. 31) When asked if his physicians had recommended any other treatments, Plaintiff responded that his physician "recommended that I have an MRI to find out the extent of everything because all I've had is x-rays of that one area where I've had the most problems, and they're suggesting that I have problems up further." (Tr. 46)

The medical records from Plaintiff's treating sources further support Plaintiff's claims that his impairments had not been sufficiently investigated. As early as June 10, 1995, David Ball, M.D., recommended Plaintiff undergo nerve conduction studies, and depending on these findings, have a MRI scan of the cervical spine. (Tr. 204) An EMG was performed on June 26, 1996. (Tr. 207) Saad Al-shathir, M.D., noted the test was normal but added: "If his symptoms persist another six months, repeat the test as recommended." (Tr. 207) His treating source, Lynnette Sanders, a registered nurse practitioner, noted Plaintiff's chronic back pain, mild scoliosis, and early mild degenerative arthritis, and scheduled an MRI for him in August 1998. (Tr. 187) On July 20, 1999, John G. Yost, M.D., noted that Plaintiff's chief complaints were low back pain, right leg pain, numbness, and weakness, and numbness and pain of the upper extremities bilaterally. On examination of Plaintiff, Dr. Yost recommended an EMG study of both the upper and lower extremities and an MRI study of the lumbar spine. (Tr. 229) He also planned to recheck Plaintiff after the EMG and MRI studies. (Tr. 229)

The Court holds that Plaintiff's testimony at the hearing, combined his treating sources' recommendations that further testing be conducted, sufficiently raised the issue of whether his medical record was fully developed. At that point in time, the ALJ should have expressly addressed whether Plaintiff's medical record with regard to his claimed neck and back impairments had been fully and fairly developed.

■ Admittedly, the ALJ did note in his decision that Dr. Yost recommended Plaintiff undergo an EMG study of his upper and lower extremities and an MRI of his lumbar spine. (Tr. 16) The ALJ, however, fails to indicate whether he found these tests to be necessary to fully and fairly develop Plaintiff's medical record. As the Court is unable to determine whether the ALJ sufficiently developed the record, the case is remanded so that the ALJ can expressly address whether

Plaintiff's claimed back and neck impairments have been sufficiently developed in the record. Upon remand, the ALJ shall consider whether the tests recommended by Plaintiff's orthopedic surgeon and treating source would be necessary or helpful in making an informed decision regarding Plaintiff's claimed back and neck impairments.

The Commissioner argues that the ALJ did not err in developing the record because Plaintiff underwent a consultative examination with Dr. Gene Hahn on April 12, 1999. Ordinarily, ordering a consultative evaluation would tend to show that the ALJ had performed his duty to develop the record. In this case, however, the ALJ had information that should have led him to question the weight that should be given the consultative evaluation performed on Plaintiff. Plaintiff testified at the hearing that he believed the consultative evaluation was not very thorough:

> Claimant: The evaluation that they did—the doctor that they did send me to, he thought it was rather strange, too, all they asked for was arm test, knee—you know, popping on the knee. There were no x-rays involved. I mean, we'd go for an hour, and it was 10 minutes? Yeah, and he didn't—he just checked my reflexes and that was it. Weighed me, and took my blood pressure, and—it wasn't a very exacting physical.

(Tr. 64–65) In response, the ALJ indicated that he understood and he would check the file and make a decision later. (Tr. 65)

Plaintiff's comments as to the superficial nature of the consultative examination are supported by the consultative physician's own report. Dr. Hahn noted in his report that "no radiological study in the past is available at this time." (Tr. 215) The Court is curious why a claimant with alleged back impairments would be sent for a consultative evaluation without the radiological studies being provided to the examining physician.

In light of the above, the Court holds that remand is also necessary so that the ALJ can send Plaintiff for another consultative examination. This consultative examination should include review of results of previous testing and evaluations, including prior x-ray studies.

## C. Credibility Determination

Plaintiff also contends that the ALJ erred in rejecting his subjective complaints of disabling pain. He argues that the ALJ erred in his credibility determination because (1) the ALJ failed to note that Plaintiff had been prescribed the pain reliever, hydrocodone, and (2) the ALJ failed to mention Plaintiff's consistent work record. Plaintiff also argues that his complaints of disabling pain are fully supported by the medical evidence because he has continually sought treatment for disabling back pain since 1998 and has taken strong pain medication.

Generally, credibility determinations are the province of the ALJ, who is "the individual optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias*, 933 F.2d at 801). Consequently, a "court ordinarily defers to the ALJ as trier of fact on credibility, ... [but] deference is not an absolute rule." *Thompson*, 987 F.2d at 1490. Reviewing courts recognize that some claimants exaggerate symptoms for the purposes of obtaining government benefits, and thus deference to the fact-finder's assessment of credibility is the general rule. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987). "As credibility determinations are peculiarly within the province of the ALJ, a court will not upset the ALJ's credibility determinations when supported

by substantial evidence." *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995).

 Where there is evidence of allegedly disabling pain, courts in the Tenth Circuit look to *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), for the framework of proper analysis. Under that framework, the court must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. *Luna*, 834 F.2d at 165; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (internal citations omitted). If objective medical evidence shows a pain-producing impairment, the ALJ must then consider the claimant's allegations of severe pain and decide whether to believe them. *Thompson*, 987 F.2d at 1489. Factors to be considered at this point include: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency of compatibility of non-medical testimony and objective medical evidence." *Kepler*, 68 F.3d at 391 (quoting *Thompson*, 987 F.2d at 1489).

 The ALJ must link his or her credibility finding to substantial evidence, that is, the ALJ needs to explain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible. *Kepler*, 68 F.3d at 391. These findings as to credibility should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting

*Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)). The ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical. *Kent v. Apfel*, 75 F.Supp.2d 1170, 1182 (D.Kan.1999) (citing *Kepler*, 68 F.3d at 391).

 Plaintiff first argues that the ALJ erred in rejecting his subjective complaints of pain by failing to note that he has been prescribed hydrocodone, a medication for moderate to moderately severe pain. The Court finds this argument unconvincing. The sole reference to hydrocodone in the medical record is after Plaintiff was treated in the emergency room in 1996, following his fall from a roof onto concrete steps. (Tr. 189) Also, the Court notes that the ALJ did question Plaintiff about the "one medicine . . . [he] recognized as probably having codeine." Plaintiff indicated that he had used that medicine in the past but currently did not have any of that kind of medicine. (Tr. 35)

Plaintiff also argues that the ALJ's credibility analysis is flawed because the ALJ failed to mention his consistent work history. Plaintiff has not cited any case law or regulation requiring the ALJ to consider a claimant's past consistent work history when making a credibility determination. In light of the above, the Court declines to find error in the ALJ's credibility determination based upon the errors alleged by Plaintiff.

### D. Treating Source Opinion

Plaintiff next claims that the ALJ erred in rejecting the opinions of his treating source. The Commissioner argues that the ALJ gave proper weight to the medical opinion of Plaintiff's treating source because he expressly found it inconsistent with other evidence in the record.

A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Castellano*, 26 F.3d at 1029; 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The Secretary will give controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. *Id.*; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Although the ALJ may disregard the opinion of a treating physician if it is conclusory and unsupported by medical evidence, the ALJ must articulate "specific, legitimate reasons" for doing so. *Frey*, 816 F.2d at 513. A treating physician may also proffer an opinion that a claimant is totally disabled. *Castellano*, 26 F.3d at 1029. The treating physician's opinion that claimant is disabled is not dispositive, however, because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *Id.*; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

In this case, the ALJ acknowledged the opinion of Lynnette Sanders, a registered nurse practitioner who had treated Plaintiff since 1995. Ms. Sanders opined that Plaintiff has been totally disabled since July 1998 but concluded that her opinion was inconsistent with other medical evidence, stating "the medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, neurological deficits, etc." (Tr. 21) The ALJ also noted that Ms. Sanders saw Plaintiff on a "very irregular basis" over the last several years. (Tr. 21)

While the ALJ properly noted that he was not required to accept Ms. Sanders' opinion that claimant is disabled, his general assertion that her opinion is inconsistent with other medical evidence fails to identify the medical evidence with which it is allegedly inconsistent. This failure to identify the inconsistent medical evidence makes it difficult, if not impossible, for the reviewing court to determine whether substantial evidence supported the ALJ's decision. In addition, the ALJ's broad assertion that "the medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, neurological deficits" is an improper justification for disregarding an opinion of a treating source. The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain. Thus, the ALJ is not entitled to *sua sponte* render a medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for this determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment *See Rice v. Sullivan*, No. 89–4102–R, 1991 WL 33436, at *6 (D.Kan. Feb.13, 1991) (citing *Miyoshi v. Bowen*, 696 F.Supp. 346, 350 (N.D.Ill.1988))

The Court also finds the ALJ's reliance on Plaintiff's irregular treatment record with Ms. Sanders to be an insufficient reason for disregarding her opinion. This is true for a number of reasons. First, the Court does not find that Ms. Sanders' treatment record was "irregular." Plaintiff's medical records indicated that he sought treatment from her on the following dates: October 3, 1995; October 9, 1995; October 12, 1995; March 19, 1996; June 13, 1996; July 17, 1996; September 10, 1996; September 18, 1996; April 14, 1997; August 31, 1998; May 18, 1999; July 13, 1999; and September 18, 1999.

(Tr. 187–193, 234) In addition, Ms. Sanders' records show that Plaintiff telephoned her on June 4, 1997 requesting anti-inflammatory medicine for his back (Tr. 188) and on October 16, 1999 for "back pain." (Tr. 187) The Court therefore determines that the ALJ's assertion that Ms. Sander's treatment record was "irregular" is not supported by substantial evidence in the record. But, even if the treatment record is deemed "irregular," rational explanations could exist for the irregular treatments, including inability to afford medical treatment, pride, or fear. *See Sand v. Shalala,* 820 F.Supp. 1299, 1307 (D.Kan.1993) (citing *Huston,* 838 F.2d at 1132). Here, the record reflects references to Plaintiff's inability to pay for medical treatment and testing, a factor the ALJ does not appear to consider. (Tr. 31, 64, 217)

For these reasons, the Court will remand the case to the Commissioner for further proceedings. Upon remand, the ALJ shall re-evaluate the medical opinion of Plaintiff's treating source, Lynnette Sanders, in accordance with this opinion.

### E. Hypothetical Presented to the Vocational Expert

 Plaintiff's last argument is that the Commissioner's decision should be reversed because the "guidelines and grids" did not direct a finding and the ALJ based his decision upon the vocational expert's answer to a fatally flawed hypothetical question. He argues that the ALJ's hypothetical questions are so poorly worded that it is impossible to ascertain the functional restrictions posed by each question.

The Court holds that the ALJ correctly concluded that strict application of the grids was not possible as Plaintiff has non-exertional limitations which narrow the range of work he is capable of performing. As the case is being remanded to the Commissioner for further proceedings, the Court finds Plaintiff's allegation of error regarding the ALJ's questioning of the vocational expert to be moot.

### VII. Conclusion

Based upon the reasons set forth above, the Court remands this action to the Commissioner to conduct further proceedings. On remand, the Commissioner shall set out specific findings and reasons for accepting or rejecting evidence regarding whether Plaintiff's impairments meet or equal Listing 1.05(C) or any other specifically identified listing. The Commissioner shall also ensure that the record is fully and fairly developed as to all Plaintiff's claimed impairments, including sending Plaintiff for another consultative examination in which the consulting physician has all the pertinent radiological studies for a full and comprehensive evaluation of Plaintiff's condition. The ALJ shall also consider whether Plaintiff's claimed back and neck impairments have sufficient medical documentation, including whether the tests recommended by his orthopedic surgeon and treating source are necessary to make an informed decision as to whether Plaintiff's claimed impairments are disabling. Finally, the Commissioner shall re-evaluate the opinion of Plaintiff's treating source in accordance with this opinion.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Plaintiff benefits is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion. Such decision will dispose of this case, including Plaintiff's Complaint (doc. 1), which has been considered a petition for review.

**IT IS FURTHER ORDERED** that Jo Anne B. Barnhart is substituted for William B. Halter as the party defendant in this suit, and the Clerk shall change the

docket to reflect the caption as shown on this Memorandum and Order.

**IT IS SO ORDERED.**