Martha D. BROWN, Plaintiff,

v.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.

No. CIV.A.01–2308–DJW.

United States District Court, D. Kansas.

Feb. 19, 2003.

---

sen Office of United States Attorney, Kansas City, KS, for Defendant.

Ross E. Stubblefield, Blue Springs, MO, for Defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the final decision of Defendant Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended. The parties have filed their consent to jurisdiction by Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73 (doc. 20). Plaintiff has filed a brief (doc. 11) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (doc. 16), and Plaintiff has filed a reply (doc. 21).

The Court has reviewed the administrative record and the briefs of both parties. As set forth below, the Court reverses the decision of the Commissioner and remands the case to the administrative law judge for further proceedings consistent with this decision.

### I. Standard of Review

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[1] The

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, Robert A. Ol-

---

1. *Castellano v. Sec'y of Health & Human* *Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[3] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."[4]

■ The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[5] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[6]

Accordingly, the court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and to determine whether the correct legal standards were applied.[7]

## II. Procedural History

Plaintiff filed her applications for disability insurance benefits and supplemental security income benefits on August 26, 1998. (*See* Certified Transcript of the Record ("Tr.") at 12, 49, 150, doc. 8.) The Commissioner denied the claims initially and upon reconsideration. (Tr. 24–27, 32–35)

On February 29, 2000, the Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's claim. (Tr. 165–198) Plaintiff appeared in person without an attorney. (Tr. 167)

On November 22, 2000, the ALJ issued his decision, in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to receive disability insurance and supplemental security income benefits. (Tr. 19) In reaching this conclusion, the ALJ determined that Plaintiff's impairments did not prevent her from performing a significant range of light work and that there are a significant number of jobs in the national economy she could perform, such as file clerk and appointment clerk. (Tr. 19)

On January 25, 2001, Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 8), which was denied by the Appeals Council on April 16, 2001 (Tr. 5–6). The findings of the ALJ therefore stand as the final decision of the Commissioner in this case.

Plaintiff alleges that she became disabled and eligible to receive disability insurance and supplemental security income benefits on June 2, 1998, due to carpal tunnel syndrome, bilateral hearing loss, and removal of a left glomus tympanicum tumor. (Tr. 13, 50) At the time of the

---

2. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991)).

4. *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)).

5. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994).

6. *Glass,* 43 F.3d at 1395 (citing *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993)).

7. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497 (10th Cir.1992).

hearing before the ALJ, Plaintiff was 48 years of age. (Tr. 50, 151) Under the Social Security regulations, she is classified as a "younger" individual.[8] Plaintiff has "more than a high school (or high school equivalent) education" but no other formal education or training. (Tr. 17, 19) Plaintiff's past relevant work includes working as a cook and kitchen supervisor. (Tr. 16, 91) She ceased all work activity on June 2, 1998, the alleged onset date of her disability. (Tr. 50)

### III. The ALJ's Findings

In his decision of November 22, 2000, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has bilateral carpal tunnel syndrom and hearing loss left ear which are impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her symptoms were credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to lift and/or carry 10 pounds frequently, stand, walk and sit the entire 8–hour workday; and is limited bilaterally in the upper extremities for repetitive pushing and puling [sic]. She should not climb ropes, ladders and scaffolds; is frequently limited in crawling; is occasionally limited in kneeling, crouching, balancing and other forms of climbing; is occasionally limited bilaterally for fingering and feeling; has limited hearing in left ear; should avoid exposed heights, concentrations of vibration in workplace and background noise above moderate office level, and is frequently limited for rough terrain.

8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has "more than a high school (or high school equivalent education" (20 CFR. §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical–Vocational Rule

---

8. *See* 20 C.F.R. §§ 404.1527, 416.927.

202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as file clerk and appointment clerk.

14. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. 18–19)

## V. Analysis and Discussion

### A. Waiver of Right to Counsel

Plaintiff first argues that the ALJ committed reversible error because he failed to advise her that any fees charged by an appointed attorney would have to be approved by the Commissioner or court. Plaintiff contends that the ALJ's failure to so advise her resulted in Plaintiff not being properly informed of her right to counsel and rendered her waiver of the right to counsel invalid.

The Court finds Plaintiff's argument to be without merit, for several reasons. First, the Court finds no statutory or regulatory basis for requiring the Commissioner to advise a claimant that the Social Security Administration or court must approve any fees charged by an attorney appointed to represent the claimant in the hearing or appeal process. The statute dealing with the representation of claimants before the Commissioner, 42 U.S.C. § 406, contains only one provision regarding the notification of claimants. It provides that the Commissioner "shall notify each claimant in writing, together with the

notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner .... Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." [9] The pertinent regulation, 20 C.F.R. § 404.1706, contains a similar notification provision. It states that when a claimant is not represented by an attorney and the Commissioner makes a determination subject to the administrative review process that does not grant the claimant all of the benefits sought, the Commissioner "will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us. We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements applicable to that organization." [10]

Nothing in either of these provisions requires the Commissioner to notify the claimant that any attorney fees charged by an appointed attorney must be approved by the Commissioner or by a court. Furthermore, nothing in the case law of this circuit requires such a notification. Tenth Circuit precedent requires only that the claimant receive notice of his/her options for obtaining an attorney and notice of free legal services that might be available, as set forth in the above-cited statute and regulation.[11] Plaintiff does not provide any Tenth Circuit support for her argument that additional information regarding

9. 42 U.S.C. § 406(c).

10. 20 C.F.R. § 404.1706.

11. *See, e.g., Carter v. Chater,* 73 F.3d 1019, 1021 (10th Cir.1996) (neither 42 U.S.C. § 404.1706 406(c) nor 20 C.F.R. § 404.1706

requires more than written advisement of the claimant's right to be represented); *Garcia v. Califano,* 625 F.2d 354, 356 (10th Cir.1980) (neither the statute nor the regulations require anything more than written notice of the claimant's right to representation by an attorney).

the approval of fees must be provided, and instead relies on a 1991 decision by the Seventh Circuit.[12] That decision, however, is not binding on this Court. There simply is no basis for this Court to apply a more stringent standard than that required by the Tenth Circuit.

Even if this Court were to hold that this more stringent standard should be applied, the Court would find that the standard had been met here. Plaintiff signed a form entitled "Right to Representation" (Tr. 45) on January 29, 2000, immediately prior to the hearing before the ALJ. That form contained the following notification:

At the hearing today you have the right to be represented by an attorney or other person of your choice. The other person does not have to be an attorney. DO YOU UNDERSTAND YOUR RIGHT TO BE REPRESENTED AT THE HEARING TODAY? YES NO

\* \* \* \* \* \*

A representative cannot charge you a fee unless and until we approve it. An explanation of the types of fee arrangements and of other information relating to fees can be found on the attached form called "Social Security and Your Right to Representation."

DO YOU UNDERSTAND THE INFORMATION ABOUT FEES? YES NO

\* \* \* \* \* \*

DO YOU WANT TO PROCEED WITH THE HEARING TODAY WITHOUT A REPRESENTATIVE? YES NO

(Tr. 45)

Plaintiff circled all of the "YES" answers. (Tr. 45)

---

**12.** *See Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir.1991).

**13.** Plaintiff also argues as an aside that the ALJ intimidated Plaintiff into proceeding with

The form also asked Plaintiff: "DO YOU HAVE ANY QUESTIONS ABOUT REPRESENTATION RIGHTS?" (Tr. 45) She answered "NO." (Tr. 45)

Plaintiff received a copy of the document entitled "Your Right to Representation" (Tr. 46–47), which is referenced in the form. That document, which consists of two pages, explains in great detail what the representative/attorney may charge, how a fee petition is filed, and how much the claimant must pay. (Tr. 46–47) In boldface type, the document states: "Your representative cannot charge or collect a fee from you without first getting written approval from us, even if your claim is denied." (Tr. 46) It also states that if the claimant goes before a federal court, the court will allow a reasonable fee for the claimant's attorney, which usually will not exceed 25 percent of all past due benefits. (Tr. 47)

█ The Court finds that this document fully informed Plaintiff of her right to have her attorney's fees approved by the Commissioner and/or court and that Plaintiff's signing of the "Right to Representation" form and her answers to the questions contained therein indicate Plaintiff understood her right to have the fees approved. Thus, even if this Court were to find that the Seventh Circuit's heightened standard should apply to this case, the standard would have been met.[13]

In light of the above, the Court holds that Plaintiff's waiver of her right to representation was valid and that no error occurred in this regard.

the hearing without counsel. The Court finds nothing in the transcript to support this contention.

## B. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ erred in determining the weight to be given Plaintiff's testimony because the ALJ allegedly never made "a specific credibility determination,"[14] and failed to consider and discuss all of the *Luna* factors in determining Plaintiff's credibility. Plaintiff argues that the credibility determination of the ALJ is "fatally flawed," thereby justifying reversal.[15]

The Court is unpersuaded by these arguments. The ALJ did in fact make a credibility determination. He expressly found "claimant's allegations regarding her symptoms were credible." (Tr. 18) In the body of his decision, the ALJ states: "Claimant has alleged she has problems hearing and using her upper extremities, the undersigned finds those allegations credible and consistent with the evidence." (Tr. 16)

Admittedly, the ALJ did not discuss any of the factors set forth in *Luna v. Bowen*[16] and gave only his conclusion but no reasons for his conclusion. This, however, does not render the ALJ's decision erroneous. Here, the ALJ found Plaintiff's complaints *to be credible.* The general requirement that the ALJ discuss the *Luna* factors and specifically state the reasons for his/her credibility decision does not apply when the ALJ determines the claimant's complaints *are credible.* As the Tenth Circuit noted in *Kepler v. Chater,*[17] the ALJ is required to "explain why the specific evidence relevant to each factor led him to conclude [the] claimant's subjective complaints *were not credible.*"[18] No reason exists to impose such a requirement where the ALJ determines that the claimant's complaints are credible, which is a decision wholly favorable to the claimant.[19] Accordingly, the Court finds that no error was committed here when the ALJ failed to discuss the *Luna* factors and when he failed to explain what specific evidence led him to conclude that Plaintiff's subjective complaints and symptoms were credible.

Even if the Court were to find this to be error, the Court would have to find it harmless given that the ALJ's credibility finding was advantageous to Plaintiff. Plaintiff fails to demonstrate how the ALJ's credibility determination and failure to state the reasons for his determination harmed her or unfairly affected her case in any way. Although she claims the ALJ's conduct makes "it impossible to determine how much weight the ALJ gave [her] symptoms,"[20] she does not explain this argument at all. The Court is at a loss to understand how Plaintiff's case was harmed by the ALJ's conduct. Thus, even if the Court were to conclude that the ALJ did commit error, the error was harmless.

---

14. Pltf. Br., doc. 11 at 15.

15. *Id.*

16. 834 F.2d 161 (10th Cir.1987).

17. 68 F.3d 387, 391 (10th Cir.1995).

18. *Id.* (emphasis added)

19. The Court's conclusion comports with the general policy set forth in 42 U.S.C. § 405(b). That provision directs the Commissioner to make findings of fact and decisions as to rights of individuals applying for disability benefits. It provides as follows: "Any such decision by the Commissioner of Social Security which involves a determination of disability and *which is in whole or in part unfavorable to such individual* shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b) (emphasis added). The statute contains no similar requirement where the decision is *favorable* to the claimant.

20. Pltf. Br., doc. 11 at 16.

And, generally speaking, "a case will not be remanded if the ALJ's mistake was merely harmless error." [21]

Accordingly, the Court finds no basis to reverse or remand the case based on these arguments.

## C. Step Three of the Sequential Evaluation Process

Plaintiff next argues that the case should be reversed, or in the alternative, remanded because the ALJ failed to support his step three determination that Plaintiff's impairments were not severe enough to meet or equal the so-called "listed impairments" that are conclusively presumed to be disabling.

The Commissioner has developed a five-step sequential evaluation process for determining disability.[22]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If he or she is not, the decision maker proceeds to step two, determining whether the claimant has a medically severe impairment or combination of impairments which significantly limit the claimant's ability to work. If the claimant is able to make such a showing, the decision maker proceeds to step three, whether the impairment meets or equals one of a number of listed impairments that are so severe as to preclude substantial gainful activity. If the claimant's impairment does not satisfy this step, then the decision maker

proceeds to step four, where the claimant must show that the impairment prevents the claimant from performing work he has performed in the past. At step five, the burden shifts to the Commissioner to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy.[23]

At step three of the sequential analysis, the ALJ determines whether a claimant's impairment "is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." [24] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[25]

In evaluating whether a claimant meets or equals the criteria for a listed impairment, the ALJ is required to compare the symptoms, signs, and laboratory findings regarding a claimant's impairments, as shown in the medical evidence associated with the claim, with the medical criteria shown with the listed impairment.[26] When making the determination whether a particular condition meets the requirements of a listed impairment, the ALJ is required at step three to discuss the evidence and explain why he/she found that the claimant was not disabled.[27] The record must demonstrate that the ALJ considered all of the evidence when making his/her step three finding.[28] Although the ALJ is not required to discuss every piece of evidence,

**21.** *Valdez v. Apfel,* 102 F. Supp 2d 1203, 1206 (D.Colo.2000) (citing *Glass v. Shalala,* 43 F.3d 1392, 1396–1397 (10th Cir.1994)).

**22.** *Bolan v. Barnhart,* 212 F.Supp.2d 1248, 1257 (D.Kan.2002) (citations omitted).

**23.** *Id.* (citations omitted).

**24.** *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

**25.** *Bowen,* 482 U.S. at 141, 107 S.Ct. 2287.

**26.** 20 C.F.R. §§ 404.1526(a), 416.926(a).

**27.** *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir.1996); 20 C.F.R. §§ 404.1526, 416.926.

**28.** *Clifton,* 79 F.3d. at 1010.

the ALJ must discuss the evidence supporting his/her decision and the uncontroverted evidence relied upon, as well as any significantly probative evidence rejected.[29] In short, the ALJ must provide a sufficient discussion of his or her conclusion so as to allow for meaningful review by the court.[30]

Plaintiff cites *Clifton v. Chater*[31] in support of her request for remand. In *Clifton,* the Tenth Circuit reversed the district court and remanded the case for additional proceedings when the ALJ made such a "bare conclusion" that it was effectively "beyond meaningful judicial review."[32] The *Clifton* court's decision was based on the fact that "the ALJ did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment."[33]

In this case, the ALJ found that Plaintiff's "medically determinable impairments [bilateral carpal tunnel syndrom and hearing loss in the left ear] do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P., Regulation No. 4." (Tr. 18) Similarly, in his "Evaluation of the Evidence" portion of his decision, the ALJ stated that Plaintiff's bilateral carpal tunnel syndrome and hearing loss in the left ear were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 15) He

further stated: "The evidence shows that claimant's impairments do not meet or equal the criteria of any listed impairment." (Tr. 15)

Nowhere in his decision does the ALJ identify any relevant listing that he compared with Plaintiff's impairments to ascertain if they met or equaled that listing. Without any reference to a specific listing, it is impossible for the Court to meaningfully review the ALJ's decision to determine whether substar tial evidence supports a finding that Plaintiff's impairments do not meet or equal the criteria of that listing.[34] Furthermore, the ALJ failed to discuss the evidence or his reasons for determining that Plaintiff's impairments did not meet or equal any impairment listing. In the absence of ALJ findings supported by a specific weighing of the evidence, the Court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that Plaintiff's impairment did not meet or equal any listed impairment and whether the ALJ used the correct legal standard in arriving at that conclusion.

Applying the rules set forth in *Clifton,* the Court concludes that remand is necessary.[35] On remand, the ALJ shall specifically identify the relevant listings he compared to Plaintiff's symptoms, signs, and laboratory findings. After the ALJ identifies the relevant listings, the ALJ shall set out his specific findings and his reasons for accepting or rejecting the evidence regard-

---

29. *Id.*

30. *Id.* at 1009–1010.

31. *Id.*

32. *Id.*

33. *Id.*

34. *See Clifton,* 79 F.3d at 1009 (ALJ's failure to identify the relevant listing and mere conclusion that the claimant's impairment did

not meet or equal any listed impairment placed the ALJ's decision beyond meaningful judicial review); *Bolan,* 212 F.Supp.2d at 1257 (same).

35. Under *Clifton,* the remedy is remand rather than reversal. *See* 79 F.3d at 1010. The Court will therefore decline to simply reverse the ALJ's decision as Plaintiff requests.

ing whether Plaintiff's impairments meet or equal those listings.

## D. Residual Functional Capacity

Plaintiff asserts several points of error with respect to step four of the sequential process and the ALJ's determination of Plaintiff's residual functional capacity ("RFC"). Step four, at which the ALJ found Plaintiff not disabled, is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC.[36] In this phase, the ALJ first identifies the individual's functional limitations or restrictions and assesses his/her work-related abilities on a function-by-function basis.[37] Then, the ALJ expresses the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."[38] In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work."[39] In the final phase, the ALJ determines "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."[40]

### 1. Inconsistencies within the ALJ's decision

Plaintiff first asserts that the ALJ's decision contains inconsistent statements as to the exertional level of work Plaintiff can perform. Plaintiff correctly points out that the ALJ states in the "Evaluation of the Evidence" section of his decision that Plaintiff can perform "light exertional work" with certain restrictions (Tr. 16), but then states two paragraphs later that

she has a "sedentary exertional level residual functional capacity." (Tr. 16–17). Then in his findings, the ALJ states that Plaintiff has the residual functional capacity to perform a "significant range of light work." (Tr. 19) Plaintiff contends that these inconsistencies in the ALJ's RFC determination are material errors of law that require reversal, or, at the very least, require remand to clarify the inconsistency in the ALJ's decision. The Commissioner does not respond to Plaintiff's arguments on this issue.

■ The Court finds that remand is appropriate on this basis. While it appears that the ALJ's reference to Plaintiff's "sedentary exertional level residual functional capacity" (Tr. 16–17) was simply a misstatement, the Court cannot leave such an important issue to speculation. The Court will therefore remand so that the Commissioner may clarify this material ambiguity about the exertional level of work Plaintiff can perform.

### 2. Linking the RFC determination with specific evidence in the record and the ALJ's compliance with Social Security Ruling 96–8p

Plaintiff next argues that the ALJ erred at step four by failing to adequately support his RFC determination because he failed to link it to specific evidence in the record. Plaintiff also argues that the ALJ erred because his RFC assessment failed to comply with Social Security Ruling 96–8p.[41] Again, the Commissioner does not respond to Plaintiff's arguments.

36. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir.1996) (citation omitted).

37. Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *1.

38. *Id.*

39. *Winfrey,* 92 F.3d at 1023.

40. *Id.*

41. Although Plaintiff treats these as two separate arguments, the Court will address them together, as the factual and legal issues raised are intertwined.

A claimant bears the burden of proving that the claimant's impairments prevent the claimant from performing work that he/she has performed in the past.[42] When, however, the ALJ makes the ultimate finding that a claimant is not disabled at step four, the ALJ is required by Social Security Ruling 96–8p to make specific and detailed predicate findings concerning the claimant's RFC, the physical and mental demands of the claimant's past jobs, and how those demands mesh with the claimant's particular exertional and nonexertional limitations.[43]

Social Security Ruling 96–8p provides in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. A failure to first make a function-by-function assessment of the claimant's limitations of restrictions could result in the adjudicator overlooking some of the claimant's limitations or restrictions.[44]

In this case, the ALJ stated the following regarding Plaintiff's RFC:

> [T]he undersigned notes that the State Agency Medical Consultants found that claimant had the residual functional capacity to do light work. The undersigned concurs that claimant can perform light exertional work, with the below restrictions. Specifically, this Administrative Law Judge finds the claimant retains the residual functional capacity to lift and/or carry 10 pounds frequently; stand, walk and sit the entire 8–hour workday; and is limited bilaterally in the upper extremities for repetitive pushing and puling [sic][.] She should not climb ropes, ladders and scaffolds; is frequently limited in crawling, is occasionally limited in kneeling, crouching, balancing and other forms of climbing, is occasionally limited bilaterally for fingering and feeling; has limited hearing in left ear[;] should avoid exposed heights, concentrations of vibration in workplace and background noise above moderate office level; and is frequently limited for rough terrain. (Tr. 16)

■ Although the ALJ purports to base these findings on the State Agency Medical Consultants' Physical Residual Functional Capacity Assessment ("Assessment") (*see* Tr. 122–129), the ALJ's findings are not consistent with many items reflected in the Assessment. For example, the Assessment states that Plaintiff can frequently lift 25 pounds (Tr. 123), while the ALJ finds that Plaintiff can frequently lift only 10 pounds (Tr. 16). In addition, the Assessment indicates that Plaintiff's ability to push and pull is "un-

---

**42.** *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988) (citing *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

**43.** *Winters v. Barnhart,* No. 00–2419–DJW, 2002 WL 1286134, at *14 (D.Kan. June 5,

2002) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184; *Winfrey v. Chater,* 92 F.3d 1017, 1023–25 (10th Cir.1996)).

**44.** Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7.

limited" (Tr. 123), while the ALJ finds that Plaintiff's ability to push and pull is "limited bilaterally in the upper extremities." (Tr. 16). Many other inconsistencies exist between the ALJ's findings and the Assessment. The ALJ, however, never explains why he makes findings inconsistent with the Assessment nor does he even acknowledge that he is rejecting portions of the Assessment. He cites to no medical records, testimony, or other evidence in support of his RFC findings, other than the Assessment. And, he fails to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. In short, the Court finds that the ALJ has failed to link his RFC determination with specific evidence in the record and has failed to comply with Social Security Ruling 96–8p.

Due to these failures of the ALJ, the Court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. His bare conclusions are simply beyond meaningful judicial review. The Court therefore holds that the case must be remanded, and upon remand the Commissioner shall provide the proper narrative discussion describing how the evidence supports his conclusions at step four, as required by Social Security Ruling 96–8p, and how the inconsistencies or ambiguities in the evidence were considered and resolved. This shall include a discussion of the reasons supporting the ALJ's apparent rejection of certain findings of the State Agency Medical Consultants' Physical Residual Functional Capacity Assessment.

### E. Substantial Evidence and Failure to Address Certain Medical Records

Finally, Plaintiff argues that the Commissioner's decision should be reversed because it is not supported by substantial evidence. More specifically, Plaintiff argues that the ALJ erred in failing to address certain medical records from Plaintiff's treating physicians which indicate Plaintiff was experiencing balance problems and headaches, Plaintiff asserts that "it is clear from [these] records that Plaintiff suffers severe physical problems." [45] Plaintiff argues that the ALJ committed reversible error by not considering these records and not basing his opinion on the substantial evidence of record. The Commissioner does not respond to these arguments. The Commissioner merely states in a conclusory fashion that "[s]ubstantial evidence on the record as a whole supports the Commissioner's decision." [46]

The Court agrees with Plaintiff that the ALJ committed error in this regard, but finds that remand rather than reversal is appropriate. The Court is particularly concerned by the ALJ's failure to address in his decision the May 16, 2000 report of Dr. Joel Greenberg, which reported that Plaintiff complained of frequent headaches, difficulty with balance, difficulty with coordination and gait . . . [and] frequent morning nausea." (Tr. 144) In addition, the ALJ failed to address Dr. Malcolm Graham's January 6, 1999 report in which he indicated that Plaintiff "has occasional slight unsteadiness" (Tr. 131), and Dr. Graham's earlier, September 28, 1998 report in which he observed that Plaintiff was "somewhat unsteady walking." (Tr. 106) Finally, the ALJ failed to address Dr. Frank Hoffman's July 20, 1998 report in which he indicated that Plaintiff had been experiencing slight vertigo. (Tr. 101).

The Court recognizes that the ALJ is not required to discuss every piece

---

**45.** Pltf. Br., doc. 11 at 20.

**46.** Def. Br., doc. 16 at 12.

of evidence.[47] The ALJ must, however "discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects."[48] Because the ALJ did not do this here, the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting this evidence.

## V. Conclusion

Based upon the reasons set forth above, the Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings. On remand, the Commissioner shall do the following: Under step three of the sequential evaluation process, the Commissioner shall identify the relevant listed impairments the ALJ compared to Plaintiff's symptoms, signs, and laboratory findings, and set out specific findings and reasons for accepting or rejecting evidence regarding whether Plaintiff' impairments meet or equal those listings. In addition, under step four of the sequential evaluation process, the Commissioner shall clarify the inconsistencies in the ALJ's decision regarding the exertional level of work that Plaintiff can perform. The Commissioner shall also provide the proper narrative discussion describing how the evidence supports his conclusions at step four, as required by Social Security Ruling 96–8p, and how the inconsistencies or ambiguities in the evidence were considered and resolved. This shall include a discussion of the reasons supporting the ALJ's apparent rejection of certain findings of the State Agency Medical Consultants' Physical Residual Functional Capacity Assessment, as discussed

above in Part V.D.2. Finally, the Commissioner shall set out the specific findings and reasons for accepting or rejecting the reports of the various treating physicians indicating that Plaintiff suffered from headaches and balance problems, as set forth in Part V.E.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Plaintiff benefits is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. This decision disposes of this case, including Plaintiff's Complaint (doc 1), which has been considered a petition for review.

---

**47.** *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir.1996) (citing *Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

**48.** *Clifton,* 79 F.3d at 1010 (citing *Vincent,* 739 F.2d at 1394–95; *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984)).