Edward S. **MONEY**, Plaintiff,

v.

Michael J. **ASTRUE**,[1] **Commissioner of Social Security. Defendant.**

No. 06–1348–WEB.

United States District Court,
D. Kansas.

Sept. 12, 2007.

---

**1.** On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commission-er Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Paul Willis Stephens Joslin, Attorney, Wichita, KS, for Plaintiff.

Richard L. Schodorf, Office of United States Attorney, Wichita, KS, for Defendant.

## ORDER ADOPTING RECOMMENDATION AND REPORT

WESLEY E. BROWN, District Judge.

Now before the court is the review of the final decision of the Commissioner of Social Security denying Edward S. Money disability insurance benefits and supplemental security income payments. The matter was referred to the Magistrate Judge for a recommendation and report pursuant to Rule 72(b), Federal Rules of Civil Procedure. The Recommendation and Report was filed on August 3, 2007. Neither party filed an objection to the Report.

The Magistrate Judge determined the Administrative Law Judge (ALJ) erred in his credibility analysis. The ALJ did not accurately report MRI test findings, did not give sufficient weight to the medical testimony, and discounted the evidence of pain and the plaintiff's allegations of pain. The Report and Recommendation also stressed the ALJ's findings were not supported by substantial evidence. The ALJ rejected opinions by medical witnesses, and did not clearly indicate what evidence he relied on in making his findings.

The record supports the findings of the Magistrate Judge and his legal conclusions. It is therefore ORDERED that the decision of the Commissioner be REVERSED, and that the case be REMANDED for further proceedings (sentence four remand) for the reasons set forth in the Magistrate Judge's Recommendation and Report.

The Clerk of the Court is directed to enter Judgment accordingly.

## RECOMMENDATION AND REPORT

JOHN THOMAS REID, United States Magistrate.

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

### I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn,* 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376, 379–380, 157 L.Ed.2d 333 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson*, 992 F.2d at 1120; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II. History of case

On August 17, 2005, administrative law judge Melvin B. Werner issued his decision (R. at 14–20). Plaintiff alleged disability beginning April 1, 1997 (R. at 14). However, there had been an earlier denial of disability on January 15, 1999 which was not reopened by the ALJ (R. at 20). For purposes of disability insurance benefits, the ALJ determined that plaintiff remained insured through March 31, 2002 (R. at 14, 16). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 1, 1997 (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumber spine, and osteoarthritis (R. at 16). At step three, the ALJ found that plaintiff's impairments do not meet or equal a

listed impairment (R. at 17). After establishing plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 18). At step five, the ALJ found that, based on vocational expert (VE) testimony, the plaintiff could perform other jobs in the national economy, including work as a call out operator, an addresser, and a charge clerk (R. at 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19–20).

### III. Did the ALJ err in his credibility analysis?

 The framework for the proper analysis of evidence of pain is that the Commissioner must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir. 1995); *Thompson v. Sullivan*, 987 F.2d 1482, 1488–89 (10th Cir.1993); *Luna v. Bowen*, 834 F.2d 161, 163–65 (10th Cir. 1987). If an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. For example, an impairment likely to produce some back pain may reasonably be expected to produce severe back pain in a particular claimant. *Luna*, 834 F.2d at 164. Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone. Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. *Luna*, 834 F.2d at 165. The ab-

sence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. When determining the credibility of pain testimony the ALJ should consider the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Thompson*, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. *Owen v. Chater*, 913 F.Supp. 1413, 1420 (D.Kan.1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler*. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain

and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. *White*, 287 F.3d at 909–910.

The ALJ's analysis of plaintiff's credibility and claims of pain are set forth below:

> Upon considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. For purposes of this threshold inquiry as to "severity", pain and other symptoms are considered as true without regard to credibility under *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

> The objective medical evidence does not fully support the claimant's subjective complaint of disabling pain. The claimant may have some discomfort due to pain. However, his claim of pain that is disabling is not consistent with the evidence in its entirety and the claimant's activities of daily living. MRIs of the claimant's lumbar spine have shown minimal disc problems and reject any signs of stenosis. (Exhibit B–16F–227) An x-ray of the lumbar spine on February 6, 2004 was within normal limits.

> (Exhibit B–6F) The claimant's pain has been controlled with medications.

> The claimant alleges being disabled due to pain in his lower back which travels to his legs. He alleges that sitting too long or standing for long periods of time causes pain. The claimant stated that lying down at least two times during the day relieves the pain. However, the record documents that physical therapy and medications have given him relief from the pain. (Exhibits B–3F, 66) With physical therapy, the claimant's medical condition has consistently improved. His back has slowly become stronger, which results in decreased back pain. (Exhibit B–13F–178) The claimant is able to leave home without assistance. He visits with others outside of the home several hours a week, and attends church several hours a week. Mr. Money reported that he is able to shop outside of the home and attend his children's school functions. He drives a motor vehicle to run errands without assistance.

> The claimant performs some household chores such as laundry. (Exhibit B–8E) He reported that he needs assistance, at times. The claimant is able to read books and the newspaper several hours a week. He did not indicate that he had to read lying down or reclined due to back pain.

> Dr. Henderson reported on February 6, 2004 that the claimant had no history of surgery, chiropractic management, epidural injections or the use of a TENS unit. The claimant made no use of an assistive device. There was no asymmetrical reflex or motor deficit noted. The claimant's gait and station were stable. On March 4, 2004, Jacob Amrani, M.D., examined the claimant and opined that the claimant's symptoms of pain should be managed with anti-inflammatories

and non-narcotic pain medications. (Exhibit B7–100) The doctor reported that, upon examination, the claimant's straight leg raising was negative, bilaterally. The doctor reported that an MRI of the lumbar spine revealed mild degenerative changes at L3–4 and L4–5. Dr. Amrani concluded that the claimant would not benefit from any type of surgical intervention, and that he should be managed with anti-inflammatories and non-narcotic pain medications.

The undersigned does not give controlling weight to the opinion of Becky Anderson, PA–C. Ms. Anderson is not a treating physician, whose opinion would be entitled to controlling weight. Her opinion also is not consistent with the evidence in its entire[t]y. She gives an opinion that the claimant can perform less than fulltime work. (Exhibit B–12F) Objective medical evidence does not support this opinion.

Pursuant to 96–6p, the Administrative Law Judge has considered the opinion rendered by the State agency medical consultants. The decision rendered here differs from those opinions. The residual functional capacity found herein is somewhat more limiting due to the claimant's ongoing complaints of pain. (R. at 17–18).

■ The court finds numerous errors by the ALJ in his credibility analysis which will require that the case be remanded for further hearing. First, the ALJ stated that the MRIs of the lumbar spine have shown "minimal disc problems and reject any signs of stenosis" (R. at 17). The MRI test result referred to by the ALJ, dated December 15, 2003, indicated the following:

FINDINGS:
THERE IS NORMAL CURVATURE AND ALIGNMENT TO THE LUMBAR SPINE. VERTEBRAL BODY MARROW SIGNAL IS UNREMARKABLE WITHOUT EVIDENCE OF A GEOGRAPHIC MARROW LESION. THERE IS MILD DISC DESICCATION SEEN AT THE L3–4 AND L4–5 LEVELS, MOST CONSISTENT WITH MILD DEGENERATIVE DISC DISEASE. THERE IS ALSO MILD BROAD BASED DISC BULGING AT THESE LEVELS WITH A SLIGHTLY MORE PROMINENT MIDLINE DISC PROTRUSION AT THE L4–5 LEVEL. THIS DOES INDENT THE VENTRAL THECAL SAC. HOWEVER NO SIGNIFICANT CENTRAL SPINAL OR NEURAL FORAMINAL STENOSIS IS SEEN. ALL OTHER LEVELS ARE UNREMARKABLE.

IMPRESSION:
L3–4 AND L4–5 DEGENERATIVE DISC DISEASE WITH BROAD BASED DISC BULGING AS WELL AS A SLIGHTLY PROMINENT MIDLINE DISC PROTRUSION AT THE L4–5 LEVEL. NO SIGNIFICANT CENTRAL SPINE OR NEURAL FORAMINAL STENOSIS IS SEEN.

(R. at 378). At no point in the MRI report does it indicate that plaintiff has "minimal" disc problems. The MRI report does indicate mild degenerative disc disease with broad based disc bulging at the L3–4 and L4–5 level, and a slightly prominent midline disc protrusion at the L4–5 level. Furthermore, the report did not "reject any signs of stenosis" (R. at 17) as claimed by the ALJ. The report stated that "no significant central spinal or neural foraminal stenosis is seen" (R. at 378). The ALJ erred by not accurately reporting the MRI test findings.

Second, the ALJ asserted that the above MRI test result and an x-ray of February 6, 2004 (R. at 244) do not support plaintiff's allegations of disabling pain. However, no medical opinion in this

record indicates that plaintiff's allegations of disabling pain are not supported by the MRI test or the x-ray. Furthermore, a physical RFC assessment by Rebecca Anderson, a physician's assistant (PA) who had treated the plaintiff, indicated that due to her limitations, plaintiff could stand for at least 2 hours in an 8–hour day and sit for less than 6 hours in an 8–hour day. P.A. Anderson stated that plaintiff's limitations are due to weakness noted in examination on lower extremities and disc degeneration and central bulge (R. at 290). P.A. Anderson also opined that plaintiff could never stoop, crouch, or climb ladders/ropes/scaffolds due to pain, range of motion, and weakness of her lower extremities (R. at 291).

■ The ALJ acknowledged that P.A. Anderson's opinion is that plaintiff can perform less than fulltime work, but rejected the opinion because "objective medical evidence does not support this opinion" (R. at 18). However, the ALJ fails to explain how the objective medical evidence fails to support the opinions of P.A. Anderson. In fact, P.A. Anderson ren-

dered her opinions in light of her examination of plaintiff's lower extremities, her evaluation of plaintiff's pain and range of movement, and in light of the disc degeneration and central bulge which had been noted in the MRI.[2]

■ The ALJ does not cite to any medical opinion which indicates that either the MRI or the x-ray relied on by the ALJ do not support either plaintiff's claims of disabling pain or the opinions of P.A. Anderson.[3] An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir.2004). The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. *Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1262 (D.Kan.2002). In the absence of any reference by the ALJ to medical evidence to support his assertion that the opinions of P.A. Anderson are inconsistent with the

2. Although consulting physician Dr. Henderson offered no opinions regarding the limitations set forth by P.A. Anderson, he did confirm limited range of motion of the dorsal and ventral planes, and diminished sensation in the left lower extremity in its entirety (R. at 243).

3. In his brief, the defendant refers to a December 10, 2001 medical report by Dr. Jones that plaintiff not engage in prolonged crawling, stooping, running, walking or standing and a weight limitation of 25 pounds (R. at 209), and a December 2, 2002 medical report by Dr. Jones that plaintiff not sit for over 1 hour without being allowed to walk and stretch for 5–7 minutes and no standing in one location for over 1 hour, no overhead work on consistent basis, no lifting over 25 pounds, and no prolonged stooping, crawling, running, walking or standing (R. at 176) (Doc. 10 at 12). However, none of the medical records of Dr. Jones were mentioned by the

ALJ in his decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir.1985). A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir.2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004). Because these medical records were not discussed by the ALJ in his decision, they will not be considered by the court.

MRI test or the x-ray, the ALJ over-stepped his bounds into the province of medicine. *Miller v. Chater,* 99 F.3d 972, 977 (10th Cir.1996).

Third, the ALJ discounted plaintiff's allegations of pain because the medical records showed that physical therapy and medications have given plaintiff relief from pain (R. at 17–18). However, the ALJ did not cite to any medical source who provided an opinion that the fact that physical therapy and medications have given plaintiff relief from pain negated the opinions of P.A. Anderson, whose limitations are consistent with plaintiff's claims of disabling pain. *See Shontos v. Barnhart,* 328 F.3d 418, 427 (8th Cir.2003) ("No medical source provided an opinion that the fact that Ms. Shontos did better while taking prescribed medication negated Dr. Burn's opinion that Ms. Shontos would have difficulty with detailed instructions").

Fourth, the ALJ discounted plaintiff's allegations of pain because plaintiff's pain has been controlled with medications (R. at 17), and further relied on the report of Dr. Henderson that plaintiff did not require epidural injections or the use of a TENS unit (R. at 18). At the hearing, plaintiff testified that she has taken Ultram, Ultracets, Dolobid, Flexeril, Lortabs and lidocaine patches for pain (R. at 406). Plaintiff indicates that Lortabs were medications of last resort because they make her dizzy and light-headed (R. at 407). With the use of pain medications, including the patch, plaintiff testified that her pain level never goes below a 6 on a 0–10 scale (R. at 403–404, 408). One of the specific factors that the ALJ is required to consider when assessing plaintiff's credibility is to consider the medications that plaintiff is taking to alleviate pain and also to consider their side effects. 20 C.F.R. § 1529(c)(3)(iv); SSR 96–7p, 1996 WL 374186 at *3. The ALJ did not mention the

use of some of plaintiff's medications, including Lortab, or the side effects of those medications. The medical records of P.A. Anderson indicate 30 Lortabs were prescribed for moderate to severe pain on September 21, 2004 (R. at 270). Given the side effects of Lortab testified to by the plaintiff, the ALJ should have considered plaintiff's testimony on this point when weighing plaintiff's credibility.

## IV. Are the ALJ's RFC findings supported by substantial evidence?

When this case is remanded, the ALJ will be required to make new RFC findings after undertaking a proper analysis of plaintiff's credibility based on all the evidence, including the opinions of P.A. Anderson and the side effects of plaintiff's medication. Because this case is being remanded for the reasons set forth above, the court will mention one issue that should be addressed when the case is remanded even though it was not specifically raised by the parties. This issue should be addressed when the case is remanded in order to insure that a proper decision is made.

█ According to SSR 96–8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley,* 493 U.S. 521, 530 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990);

*Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir.1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and non-medical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart,* 72 Fed.Appx. 781, 784–785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Spicer v. Barnhart,* 64 Fed.Appx. 173, 177–178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. *Cruse v. U.S. Dept. of Health & Human Services,* 49 F.3d 614, 618 (10th Cir.1995). When the ALJ has failed to comply with SSR 96–8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. *Brown v. Commissioner of the Social Security Administration,* 245 F.Supp.2d 1175, 1187 (D.Kan.2003).

In his decision, the ALJ did not include a narrative discussion describing how the evidence supported each conclusion, as required by SSR 96–8p. The ALJ rejected the RFC opinions expressed by P.A. Anderson, and made RFC findings "somewhat more limiting" than those expressed by the state agency medical consultants (R. at 18). However, the ALJ failed to indicate what medical or other evidence he relied on in making his RFC findings. Therefore, on remand, the ALJ shall provide the narrative discussion required by SSR 96–8p when making his RFC findings. The ALJ should also make a deter-mination of whether the record is sufficient to permit him to make RFC findings; if not additional medical evidence should be obtained. *Fleetwood v. Barnhart,* 211 Fed.Appx. 736, 740–741 (10th Cir. Jan. 4, 2007).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.